**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **JOHNY ANDRADE CUNALATA** | **CIVIL ACTION NO. 3:26-CV-01155** |
| | **SEC P** |
| **VERSUS** | **JUDGE EDWARDS** |
| **TIM WYATT ET AL** | **MAG. JUDGE DAVID J. AYO** |

MEMORANDUM RULING

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) filed by Petitioner Johny Andrade-Cunalata ("Andrade-Cunalata"), an immigration detainee at the Jackson Parish Correctional Center in Jonesboro, Louisiana. The federal Respondents ("the Government") have answered the Petition (ECF No. 10), and Andrade-Cunalata submitted a reply (ECF No. 11).

After careful consideration of the record, the parties' memoranda, and the applicable law, the Petition is GRANTED.

I.    Background

Andrade-Cunalata is a native and citizen of Ecuador. ECF No. 1-3 at 2. He entered the United States on July 18, 2022, near Paso del Norte, Texas, without being admitted or paroled after inspection by an immigration officer. *Id.* The following day, the Department of Homeland Security ("DHS") released Andrade-Cunalata on parole. ECF No. 1-6.

On August 7, 2023, during an ICE check-in appointment, DHS served Andrade-Cunalata with a Notice to Appear, charging him as inadmissible under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") as an alien present in

the United States without having been admitted or paroled.  ECF No. 1-3.  That same day, DHS issued an Order of Release on Recognizance, which specified conditions for him to comply with, including to report to any hearings or interviews as directed by ICE or the immigration court.  ECF No. 1-5 at 2.  Thus, Andrade-Cunalata was released a second time.  ECF No. 1-7.

Andrade-Cunalata's removal proceedings remained pending before the Newark Immigration Court.  ECF No. 1 at 6.  On February 24, 2025, an immigration judge granted Andrade-Cunalata's pro se motion to be added as a dependent to his wife's application for asylum, withholding of removal, and protection under the Convention Against Torture, which was filed on September 2, 2023. *Id.* at 6-7; ECF No. 11.  On September 29, 2025, the immigration judge scheduled the merits hearing for November 6, 2026. ECF No. 1-10.

Andrade-Cunalata asserts that, on December 12, 2025, ICE officers re-detained him during a traffic stop while he was traveling with his wife and daughter. ECF Nos. 1-4 at 2; 1 at 7.  Nothing in the record indicates that DHS provided advance notice of its decision to revoke Andrade-Cunalata's release before taking him back into custody.  He has remained detained since December 12, 2025.  ECF No. 1-15 at 2-3.

While this habeas proceeding was pending, the Immigration Judge conducted Andrade-Cunalata's merits hearing.  On May 12, 2026, the Immigration Judge found Andrade-Cunalata inadmissible under INA § 212(a)(6)(A)(i); denied his applications for asylum, withholding of removal, and protection under the Convention Against

Torture; but granted voluntary departure under safeguards.  The Immigration Judge advised that Andrade-Cunalata reserved his right to appeal.  ECF No. 10-2.

On June 11, 2026, Andrade-Cunalata filed a case appeal, which remains pending.[1]  No briefing deadline has been scheduled.  *Id.*

## II.    Law and Analysis

Andrade-Cunalata contends that the Government violated the Due Process Clause of the Fifth Amendment by re-detaining him after allowing him to remain at liberty in the United States for more than three years, without first providing notice, a hearing, or any individualized determination that continued detention was warranted.

The Government responds that Andrade-Cunalata's detention is mandatory under 8 U.S.C. § 1225(b)(2), as interpreted by the Fifth Circuit in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), and that no additional process is constitutionally required.  ECF No. 10.

The Court agrees that *Buenrostro-Mendez* forecloses any argument that Andrade-Cunalata is detained under the wrong provision of the INA.  That conclusion, however, does not resolve Andrade-Cunalata's constitutional claim.

This Court previously recognized that the question of whether Congress authorized detention under § 1225(b) is analytically distinct from whether the Government may revoke a liberty interest without affording constitutionally adequate process.  *See Diallo v. Trump*, 1:25-CV-2012, 2026 WL 1230389 (W.D. La.

---

[1] https://acis.eoir.justice.gov/en/caseInformation

Mar. 5, 2026), *Kilic v. Acuna, et al.*, 1:25-CV-01928, 2026 WL 1652575, at *2 (W.D. La. June 8, 2026); *Ghughunishvili v. Trump*, 3:26-CV-00086, ECF No. 13 (W.D. La. Mar. 20, 2026); *Garcia-Gil v. Acuna*, 1:26-CV-00207, ECF No. 10 (W.D. La. April 29, 2026).

Indeed, the Government acknowledges that this case is materially indistinguishable from *Diallo*. Although preserving their jurisdictional arguments for appeal, Respondents expressly state that *Diallo* "would control the result here if the Court adheres to that decision," because "the facts are not materially distinguishable." ECF No. 10 at 3.

### Procedural Due Process

As previously explained in *Diallo, Kilic, Ghughunishvili, Garcia-Gil*, and other cases, this case concerns procedural due process, not statutory interpretation. Andrade-Cunalata's claim is separate and apart from whether he is ultimately subject to mandatory detention under § 1225(b). Rather, the question is whether, after DHS elected to release him—twice—and permitted him to remain at liberty in the United States for more than three years while complying with the conditions of his release, the Fifth Amendment required some form of individualized process before that liberty could be revoked. *See Hernandez-Fernandez v. Lyons*, 2025 WL 2976923, at *7, *9 (W.D. Tex. Oct. 21, 2025).

Neither *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020), *Jennings v. Rodriguez*, 583 U.S. 281 (2018), nor *Buenrostro-Mendez* forecloses Andrade-Cunalata's constitutional claim. As this Court observed in *Diallo*, those

decisions address Congress's statutory detention authority and the scope of constitutional protections afforded applicants for admission, but they do not answer the distinct question whether due process permits the Government to revoke an existing liberty interest without any individualized procedure.

Accordingly, the Court again applies the balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, courts consider: (1) the private interest affected; (2) the risk of an erroneous deprivation through the procedures used and the probable value of additional procedural safeguards; and (3) the Government's interests, including the burdens of additional procedures.

### 1. Private Interest

"The interest in being free from physical detention is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Martinez v. Noem*, 5:25-CV-1007, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025). Although *Buenrostro-Mendez* establishes that § 1225(b) authorizes mandatory detention, it does not eliminate the liberty interest arising from Andrade-Cunalata's three-year period of freedom in the community.

Here, DHS twice determined that Andrade-Cunalata could remain at liberty while his removal proceedings were pending. He remained in the community for more than three years before DHS reversed course and re-detained him. Nothing in the record indicates that he absconded, violated the conditions of his release, or engaged in criminal conduct. Instead, the record reflects that the re-detention resulted from

DHS's revised interpretation of the detention provisions, not from any change in Andrade-Cunalata's conduct.  ECF No. 10 at 2.

Although *Buenrostro-Mendez* confirms that § 1225(b) governs Andrade-Cunalata's detention, it does not eliminate the liberty interest created when the Government affirmatively released him and permitted him to remain free for years before suddenly revoking that liberty without any notice.  *See Montejo Ramos v. Thompson, et al.,* 2026 WL 1954943, at *3 (W.D. Tex. May 21, 2026); *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 685-86 (W.D. Tex. 2025); *Hernandez-Fernandez,* 2025 WL 2976923, at *8–9 (citing *Espinoza v. Kaiser,* 2025 WL 2581185, at *9 (E.D. Ca. 2025); *Diaz v. Kaiser*, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025)).

This factor favors Andrade-Cunalata.

### 2.    Risk of Erroneous Deprivation

Respondents argue that additional procedures would serve no purpose because detention under § 1225(b) turns solely on statutory status, making facts such as dangerousness or flight risk legally irrelevant.  Relying on *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), they contend due process does not require hearings regarding facts that cannot alter the statutory outcome.  ECF No. 10 at 7.

The Court is not persuaded.

First, *Doe* involved placement on a sex offender registry rather than physical confinement, and expressly questioned whether any liberty interest existed. Civil immigration detention, by contrast, implicates one of the most fundamental liberty interests protected by the Due Process Clause.  *See Jaimes Gomez v. Ortega*, 1:26-

CV-00646, 2026 WL 1196603, at *3 (W.D. Tex. Apr. 15, 2026) (finding *Doe* inapposite) (collecting cases).

Second, Andrade-Cunalata does not dispute that *Buenrostro-Mendez* places him within the scope of § 1225(b).  Rather, he argues that, notwithstanding § 1225(b), the Due Process Clause independently requires meaningful procedural safeguards before the Government may revoke previously granted liberty.  Andrade-Cunalata further contends that individualized considerations such as dangerousness and risk of flight remain constitutionally relevant because those are the regulatory interests traditionally recognized as justifying civil immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

The Court need not decide the full extent of that argument.  It is sufficient to conclude that Andrade-Cunalata received no notice, no hearing, and no opportunity to contest the revocation of the liberty DHS had previously granted.  The complete absence of procedural safeguards creates a substantial risk of erroneous deprivation.

### 3.     Government's Interest

The Government unquestionably possesses a substantial interest in enforcing the immigration laws enacted by Congress and in detaining those individuals whom Congress has made subject to § 1225(b).

Requiring constitutionally adequate procedures before revoking previously granted liberty does not undermine Congress's determination that applicants for admission are generally subject to mandatory detention.  Rather, it requires only that the Government afford constitutionally adequate procedures before withdrawing

liberty it has previously conferred. Due process protections remain even when government authorities have discretion to revoke supervision. *See Mendoza v. Noem*, 823 F.Supp.3d 636, 649 (W.D. Tex. Feb. 26, 2026); *Lepe Hernandez v. Noem,* 5:26-CV-0694, 2026 WL 990024, at *4 (W.D. Tex. Apr. 13, 2026).

Balancing the *Mathews* factors, the Court concludes that the Government violated Andrade-Cunalata's procedural due process rights by re-detaining him without affording any individualized process after permitting him to remain at liberty for more than three years. This conclusion is consistent with this Court's prior decisions recognizing that *Buenrostro-Mendez* resolves the statutory detention question but does not authorize the Government to revoke an established liberty interest without constitutionally adequate procedures.

## III.   **Conclusion**

For the foregoing reasons, IT IS HEREBY ORDERED that the Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED. Respondents are ORDERED to release Andrade-Cunalata from custody by July 17, 2026, with advance notice provided to counsel.

IT IS FURTHER ORDERED that the parties shall file a joint notice of compliance with this Order by Monday, July 20, 2026.

IT IS FURTHER ORDERED that the Motion to Expedite (ECF No. 12) is DENIED as MOOT.

THUS DONE in Chambers on this 16th day of July, 2026.

_____
Jerry Edwards, Jr.
United States District Judge